## NO. 15-30538

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA**,

Plaintiff – Appellee Cross-Appellant

v.

**JERMAINE J. CHAPMAN**, also known as Dump Truck, **CHARLES BOYER,** also known as Slim,

Defendants – Appellants

**JEFFERY D. PERRY**,

Defendant – Appellant Cross-Appellee

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA
### Docket No. 3:13-CR-00057-1-SDD-RLB

### ORIGINAL BRIEF FOR THE APPELLANT CROSS-APPELLEE, JEFFERY D. PERRY

---

Michael Sean Walsh (Louisiana Bar Roll No. 08500)
TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.
Post Office Box 2471
Baton Rouge, LA 70821-2471
Telephone:  (225) 387-3221
Facsimile:  (225) 346-8049
*Appointed Attorney by the United States Middle District of Louisiana for Defendant, Jeffery D. Perry*

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Defendant-Appellant Cross-Appellee:*
Jeffery D. Perry, BOP #06450095
USP Pollock
U.S. Penitentiary
P. O. Box 2099/1000 Airbase Road
Pollock, LA 71467

*Attorneys for Defendant-Appellant*
*Cross-Appellee:*
Michael Sean Walsh
Taylor, Porter, Brooks & Phillips L.L.P.
P. O. Box 2471
Baton Rouge, LA 70821-2471
Telephone:  (225) 381-0247
michael.walsh@taylorporter.com

*Attorney for Defendant-Appellant*
*Charles Boyer, also known as Slim:*
Joseph Kelsey Scott, III
830 Main Street
Baton Rouge, LA 70802
Telephone:  (225) 389-3114
jkscott@brgov.com

*Attorney for the Government:*
Robert Piedrahita
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, LA 70801
Telephone:  (225) 389-0443
robert.piedrahita@usdoj.gov

*Attorney for Defendant-Appellant*
*Jermain J. Chapman, also known as*
*Dump Truck:*
Christopher Albert Aberle
P. O. Box 8583
Mandeville, LA 70470-8583
Telephone:  (985) 871-4084
caberle@bellsouth.net

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

*By: s/Michael Sean Walsh*_____
      Michael Sean Walsh (Louisiana Bar Roll No. 08500)
      Post Office Box 2471
      Baton Rouge, LA 70821-2471
      Telephone:  (225) 387-3221
*Appointed Attorney by the United States Middle*
*District of Louisiana for Defendant, Jeffery D. Perry*

i

1366047.v1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The issue presented by this case is essentially whether the evidence presented at trial by the United States Government was sufficient beyond a reasonable doubt to support the various verdicts of guilt as found by the jury. This case involved a two-week trial, thousands of pages of testimony, and a multi-count indictment. Based on the voluminous record and the magnitude of this decision, Appellant believes that oral argument would be helpful to the Court. As a result, Appellant respectfully requests that this Court grant oral argument.

1366047.v1

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PARTIES ...............................................i

STATEMENT REGARDING ORAL ARGUMENT .......................................ii

TABLE OF CONTENTS ............................................................................ iii

TABLE OF AUTHORITIES ........................................................................iv

JURISDICTIONAL STATEMENT ..............................................................vii

I.      STATEMENT OF ISSUES .......................................................1

II.     STANDARD OF REVIEW ........................................................1

III.    STATEMENT OF THE CASE ..................................................2

IV.     SUMMARY OF THE ARGUMENT ........................................16

V.      THE ARGUMENT ...................................................................20

      A.      The Evidence Presented by the Government was
            Insufficient to Support Appellant's Conviction of
            Conspiracy to Possess with the Intent to Distribute in
            Violation of 21 U.S.C. § 846 .....................................20

VI.     CONCLUSION ........................................................................28

VII.    CERTIFICATE OF COMPLIANCE .......................................30

CERTIFICATE OF SERVICE ......................................................................31

1366047.v1

# TABLE OF AUTHORITIES

Page

## CASES

*Clark v. Procunier*,
  755 F.2d 394, 396 (5th Cir. 1985) ...........................................................................1

*Direct Sales Co v. United States*,
  319 U.S. 703, 713 (1943) ......................................................................................18

*Iannelli v. United States*,
  420 U.S. 770, 777 (1975) ......................................................................................21

*In re Winship*,
  397 US 358, 361 (1970) ........................................................................................17

*Jackson v. Virginia*,
  443 US 307, 319 (1979) ................................................................................... 17, 21

*Schlup v. Delo*,
  513 U.S. 298 (1995) ..............................................................................................21

*United States v. Asibor*,
  109 F.3d 1023, 1030 (5th Cir. 1997).......................................................................1

*United States v. Casto*,
  889 F.2d 562, 565 (5th Cir. 1989) ........................................................................18

*United States v. Contreras*,
  249 F.3d 595, 599 (7th Cir. 2001).................................................................... 18, 23

*United States v. Dekle*,
  165 F.3d 826, 829 n.3 (11th Cir. 1999)........................................................... 19, 22

*United States v. Donald Frank*,
  Criminal No. 10-27-JJB, MD LA.............................................................................9

*United States v. Emuegbunam*,
  268 F.3d 377, 395-96 (6th Cir. 2001).....................................................................26

*United States v. Fitzharris,*
   633 F.2d 416, 424 (5th Cir. 1980)........................................................26

*United States v. Fuller,*
   532 F.3d 656, 663 (7th Cir. 2008)........................................................23

*United States v. Galvan*,
   693 F.2d 417, 419 (5th Cir. 1982)........................................................26

*United States v. Gutierrez,*
   559 F.2d 1278 (5th Cir.1977)...............................................................27

*United States v. Hach*,
   162 F.3d 937, 943 (7th Cir. 1998), cert. denied, 526 U.S. 1103 (1999) ..............23

*United States v. Harris,*
   821 F.3d 589 (5th Cir. 2016)..................................................................1

*United States v. Lechuga*,
   994 F.2d 346, 347 (7th Cir. 1993)............................................... 19, 22

*United States v. Lopez-Urbina*,
   434 F.3d 750, 757 (5th Cir. 2005).........................................................1

*United States v. Maltose,*
   985 F.2d 743, 746 (5th Cir. 1992).......................................................26

*United States v. Miele*,
   989 F.2d 659, 666 (3d Cir. 1993).........................................................25

*United States v. Oliva,*
   497 F.2d 130 (5th Cir.1974)................................................................27

*United States v. Rios-Morales,*
   541 Fed. App'x 373 (5th Cir. 2013)............................................. 21, 24

*United States v. Rivera,*
   273 F.3d 751, 755 (7th Cir. 2001).......................................................23

*United States v. Roe*,
   210 F.3d 741, 748 (7th Cir. 2000).......................................................25

v

*United States v. Thomas ("Thomas II"),*
 284 F.3d 746, 752-53 (7th Cir. 2002).................................................24

*United States v. Thomas,*
 690 F.3d 358, 366 (5th Cir. 2012) ......................................................21

*United States v. Villegas,*
 911 F.2d 623, 630 (11th Cir. 1990) .....................................................27

*United States v. White,*
 569 F.2d 263 (5th Cir.), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149
 (1978).........................................................................................27

*United States v. Williams,*
 20 F.3d 125, 128 (5th Cir. 1994) .......................................................17

## ACTS, CODES, STATUTES

18 U.S.C. § 3231 ................................................................... vii

18 U.S.C. §§ 2119, 924(c)(1)(A), 922(g)(1) and (2) ..................................3

21 U.S.C. § 841(a)(1)...................................................................2

21 U.S.C. § 846.......................................................................1

28 U.S.C. § 1291 ................................................................... vii

LA. CODE CRIM. PROC. ART. 804(A)(1)................................................20

## CONSTITUTIONAL PROVISIONS

U.S. CONST. AMEND. V. ...............................................................17

## **JURISDICTIONAL STATEMENT**

This is an appeal from a final judgment of conviction and sentence of the District Court in a criminal case. The District Court had subject-matter jurisdiction pursuant to 18 U.S.C. § 3231. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291.

The judgment was entered on September 23, 2014. ROA.665. Appellant, Jeffery D. Perry, was sentenced in the United States Middle District Court of Louisiana by the Honorable Judge Shelley D. Dick on August 19, 2015. ROA.3711-3715.  The notice of appeal was timely filed on August 24, 2015. ROA.855.

1366047.v1

## I.    **STATEMENT OF ISSUES**

1.    Based on the evidence presented by the United States Government, whether a reasonable jury could find the evidence sufficient beyond a reasonable doubt to support the judgment and conviction of conspiracy in violation of 21 U.S.C. § 846.

## II.    **STANDARD OF REVIEW**

This Court reviews the sufficiency of the evidence *de novo*.[1]  The test is whether, when the evidence is viewed in the light most favorable to the verdict, a reasonable jury could conclude that the relevant evidence established all of the essential elements of the crime beyond a reasonable doubt.[2] If the evidence gives equal or nearly equal circumstantial support to guilt and innocence, then reasonable doubt necessarily exists, and the conviction must be reversed.[3] This Court reviews the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices supporting the verdict made in favor of the government.[4]

---

[1] *United States v. Harris,* 821 F.3d 589 (5th Cir. 2016).

[2] *United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005) (citations omitted).

[3] *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985) (reversing denial of a writ of habeas corpus on a burglary conviction where evidence gave equal or nearly equal circumstantial support to guilt and innocence).

[4] *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)

1

## III.   STATEMENT OF THE CASE

Jeffery D. Perry (hereinafter referred to as "Appellant," "Defendant," and/or "Perry" interchangeably) was one of eight (8) individuals named in a nineteen-count indictment, specifically charging him, among other charges, with conspiracy to possess and distribute two-hundred and eighty (280) grams or more of a substance containing a cocaine base and five (5) kilograms or more of cocaine powder in violation of 21 U.S.C. §§ 841(a)(1) and 846 from August of 2006 and continuing until September 2011. ROA.126.

Perry's jury trial, initially presided over by the Honorable Judge James J. Brady but soon after replaced by the Honorable Shelley D. Dick, commenced on September 15, 2014.  ROA.2523-24. On September 23, 2014, the jury returned a verdict of guilty on fourteen of the nineteen charges originally brought against him. ROA.3670-76. Perry appeals his conviction and sentence on all counts of the indictment, the most critical of which is Count One, convicting Perry of conspiracy to violate and violating 21 U.S.C. §§ 841(a)(1) and 846.

Perry filed a timely Motion for New Trial and a Motion for Judgment of Acquittal or a New Trial, both of which were denied.  ROA.849 and ROA.7095, respectively. On August 19, 2015, the District Court sentenced Perry to a term of life imprisonment plus an additional 180 months. ROA.855. Following sentencing, Perry was advised of his right to an appeal and was remanded to the U.S. Marshal

2

to begin serving his sentence.   ROA.3714-15. Perry filed his timely Notice of Appeal on August 25, 2015.  ROA.855.

A jury found Perry guilty of the following: Count One, conspiracy to distribute and to possess with the intent to distribute 280 grams or more of cocaine base, also known as "crack" cocaine and five (5) kilograms or more of cocaine; Count Two, possession with the intent to distribute 28 grams or more of cocaine base, also known as "crack" cocaine; Count Four, distribution of 500 grams or more of cocaine; Count Five, car-jacking; Count Six, using, carrying, and discharging a firearm during and in relation to a crime of violence and drug trafficking crime; Count Seven, possession of a firearm by a convicted felon; Count Eight, aiding and abetting a convicted felon to possess a firearm; Count Nine, possession with the intent to distribute 28 grams or more of cocaine base, also known as "crack" cocaine; Count Ten, possession of a firearm in furtherance of a drug trafficking crime; Count Eleven, possession of a firearm by a convicted felon; Count Thirteen, distribution of 28 grams or more of cocaine base, also known as "crack" cocaine; Count Fourteen, distribution of 280 grams or more of cocaine base, also known as "crack" cocaine; and Count Seventeen, possession with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. §§ 2119, 924(c)(1)(A), 922(g)(1) and (2). ROA.3711-12.

Count Fifteen pertained to a July 21, 2011 date, also concerning Distribution of Two Hundred and Eighty (280) grams or more of cocaine base; and Count Sixteen was dismissed during the trial. ROA.2688.  Perry was found not guilty of Counts Three and Twelve. ROA.3670.

The Government's theory alleged a far-flung conspiracy beginning in August 2006 and continuing until September of 2011 and involving no fewer than eight individuals. ROA.126. According to the Government, Perry was the hub of this conspiracy, with all other alleged co-conspirators acting as spokes in the wheel.  ROA.886.  As will be shown in the proceeding paragraphs, the totality of the evidence presented against Perry came from either unindicted co-defendants, whom had plead in other cases, or that of Robby Knight, all of which are wholly without any indicia of trustworthiness or reliability.

Beyond the consummation of the underlying offense of illicit drug sales between Perry and the various Government witnesses, there was no evidence presented at trial which established that any of these relationships included an underlying agreement to further distribute drugs as is necessary for a charge of conspiracy to possess with the intent to distribute cocaine.

To support its argument, the Government first alleged that two residences, referred to as *click houses*, located at 221 Evergreen Street and 253 Delphine Street in Baton Rouge, Louisiana, served as the base of the operations.  ROA.887.

4

However, none of the evidence put forth by the Government established a connection between Perry and a routine drug operation functioning from either address.

***Delphine Street Property*** – The first network of the alleged conspiracy operations was a property owned by Jeffery Perry's parents and located at 253 Delphine Street. ROA.1028. Detective Eric Burkett, a Baton Rouge City Police detective, testified that on June 10, 2009, detectives from the Narcotics Division of the Baton Rouge City Police Department executed a search warrant of the Delphine Street address. ROA.973. While administering the Delphine Street search, officers located sixty-eight (68) grams of crack cocaine and one (1) gram of powder cocaine; three digital scales; $213.00 in cash; and a Smith and Wesson, Model SW40VE .40 caliber pistol bearing serial number RBP4454. ROA.985. Neither of which were conclusively associated with Perry. According to records maintained by the firearms dealer, the semi-automatic pistol was purchased by the girlfriend of Eric Perry. Additionally, officers found Lonnie Johnson in possession of Codeine and cocaine powder. ROA.976-77, 985. According to reports, during the search of the foregoing residence, Perry walked up to the officers inquiring as to the basis of the search. ROA.997.

Outside of his physical presence questioning the officers and a key to the Delphine residence found in Perry's pocket, officers did not uncover any

5

information, clothing, or possessions belonging to Perry which would affirmatively link him to the Delphine Street address.  ROA.1029. The only remnant of any association to the residence was a photo of Perry and his co-defendant, Jermaine Chapman, located in the living room.  ROA.978. The Delphine Street investigation did not lead to any activities associated with the arrests made subsequent to the search. ROA.1021-22. More importantly, at trial there was no testimony presented which established the administration of a drug network from the Delphine Street address.  ROA.1037.  Nor was any information ever received by the department suggesting that Jeffery Perry was selling drugs out of the Delphine Street residence.  ROA.1022. In fact, Detective Burkett admitted on cross-examination that the information the department received pertaining to the Delphine Street house implicated that a man named "Wayne" was selling drugs out of the Delphine property.  ROA.1029.

*Evergreen Street Property* – On July 1, 2010, law enforcement agents executed a search warrant of 221 Evergreen Street. During the search, officers found five bags containing approximately 77.82 grams of crack cocaine and approximately 34.31 grams of powder cocaine in a hidden compartment above a bedroom door. ROA.2103, 2133-34. Significantly, while inside the Evergreen residence, detectives found both an Entergy bill and a bill from Baton Rouge Water Company, both of which bore Jermaine Chapman's name and established

6

his occupancy, rather than that of Jeffery Perry. ROA.2113. Additionally, Eric Stevenson, the father of Jeffery Perry testified that he was the owner of 221 Evergreen Street. ROA.1752. Thus, no evidence was presented by the Government establishing an affiliation between Perry and the alleged click house located on Evergreen Street.

As one can see, there was absolutely no evidence whatsoever presented by the Government establishing any relation between Perry and the homes; nor any information implicating that a drug conspiracy operated from either residence.

In an attempt to establish a conspiracy from the substantive predicate offense – here, a simple agreement between a buyer and seller for the sale of drugs – the Government called Mark Lusco, Agent for the Drug Enforcement Administration, to testify as to events surrounding Perry's September 2009 arrest stemming from a sting operation orchestrated by the Federal Drug Enforcement Administration. ROA.1060. In September 2009, the Federal Drug Enforcement Administration employed a confidential source, identified as "Miami" to pose as a multi-kilogram cocaine dealer. ROA.1060. According to Agent Lusco's testimony, on or about September 8, 2009, the paid informant met Donald Frank, an additional target of the Federal Drug Enforcement Administration, to purchase approximately 14 kilograms of cocaine. ROA.1066. While fully wired and monitored by Task Force Agent, Paul Marionneaux, Miami met Mr. Frank near a restaurant off of

7

Government Street to negotiate the transaction. ROA.1066. The following day, on September 9, 2009, Mr. Frank again met Miami, who was likewise monitored, to discuss the manner and method of payment for delivery of the kilograms of cocaine. ROA.1080-87.

A brief exchange between Perry and Miami occurred near 2928 Government Street; however no distribution occurred. ROA.1095. Shortly thereafter, Jeffery Perry returned with approximately $300,000.00 he was allegedly expected to pay Miami for the cocaine. ROA.1095. According to Agent Lusco's testimony, Miami stepped inside of Perry's vehicle, emerged a few minutes later and gave a signal to alert officers to arrest Perry. ROA.1095. Law enforcement agents quickly converged and approached the vehicle to arrest Perry and Perry fled the scene. ROA.1095. He was captured and arrested shortly thereafter. ROA.1097. It is important; however, to note that during trial, Agent Lusco directly testified that he did not see Perry actually sell any drugs. ROA.1137. Moreover, once apprehended, Officer Kevin Istre conducted a search of Perry. ROA.1161. Officer Istre testified at trial that on the date of the sting operation, no guns were found on Perry's person, in the duffle bag, nor in the vehicle he was driving. ROA.1190-91. Therefore, Officer Istre testified that he could not reasonably associate any guns with Perry on the day of the event. ROA.1191.

8

On August 21, 2011, Donald Frank was separately tried and convicted of conspiracy to possess with the intent to distribute cocaine. The United States did not call Miami as a witness during Frank's trial; rather, video recordings of the encounters between Miami and Frank were played for the jury.[5]   On March 6, 2012, Donald Frank was sentenced to serve a term of life imprisonment by the Honorable James J. Brady.

Thereafter, on September 18, 2011, officers with the Baton Rouge Parish Police Department were given information that suggested Perry would be accompanying another vehicle as it transported a large quantity of narcotics from Houston, Texas to Baton Rouge, Louisiana.  ROA.2849. The informant suggested that the vehicle containing the large quantity of narcotics would be a black Toyota Solara, but would be accompanied by a White Honda Accord. ROA.2849. After switching lanes without using a turning signal, a traffic stop was initiated on the black Toyota Solara occupied by co-defendants, Jermaine Chapman and Blaze Franklin.  ROA.2848-78. Officers searched the Honda Accord, neither owned nor occupied by Perry, and located approximately two (2) kilograms of cocaine. ROA.2867. A white Honda Accord occupied by Perry and Johnathon Johnson was also stopped in West Baton Rouge Parish.  ROA.2865. No contraband was located

---

[5] *See United States v. Donald Frank*, Criminal No. 10-27-JJB, MDLA.

9

in the vehicle occupied by Jeffery Perry.  Nor were any guns located in either car. ROA.2878-79;2900.  Police arrested all four individuals for possession with the intent to distribute cocaine, which was the basis of count 17 in the instant federal offense. ROA.2848-78.

In an attempt to prove a joint endeavor and concerted collaboration, the Government called a number of individuals, both unindicted co-defendants and previous buyers, many of whom had significant illegal drug-use histories themselves and were cooperating in exchange for reduced sentences. It is important to note that absent cooperation, many of these witnesses faced significant punishment based on their admissions concerning their involvement in illicit drug sales.

One witness called by the Government was Mark Allen (hereinafter referred to as "Allen"), an admitted drug addict with a $1,000.00 a day habit and serial offender having spent 20 of his 43 years of life in jail. ROA.1998. Allen testified on behalf of the Government as a key witness attesting to Perry's involvement in many of the federal charges brought against him.  ROA.1998-2002.  First, as to the alleged robbery of an Asian male known as "Chinaman," occurring on or around September 25, 2009, the known addict, who himself admitted to stealing drugs from Perry during the time of their friendship, testified that he believed Perry was behind the robbery of Chinaman.  ROA.1998. However, contradictory testimony

10

was introduced when Darnell Dalton, an unindicted co-defendant, admitted he was told by Eugene Williams, a co-defendant with Perry, that it was Williams and Allen who robbed Chinaman. ROA.2393. A few days later, on October 3, 2009, Allen approached William Johnson in the driveway of the Evergreen residence, pointed a pistol at Johnson and demanded Johnson give him all of the cash Johnson was carrying. ROA.1885-86. When Johnson attempted to disarm him, Allen shot Johnson in the arm, took the $80,000.00 in Johnson's pocket, and fled the scene in Johnson's vehicle. Allegedly, Allen was to receive a sum of money and an ounce of cocaine from Perry for the robbery of Johnson. ROA.1894. At trial, Allen also admitted that he was high on cocaine the night of the event and could not remember the details the next day. ROA.1898-99. Again, the testimony of Darnell Dalton refuted Allen's statements, as Dalton recalled Perry stating he had nothing to do with Johnson's shooting or robbery. ROA.2409.

Not only was Allen cooperating with the Government for his own benefit by testifying against Perry, but Allen himself has come into this Honorable Court lacking clean hands and as such, the reliability of his testimony should have been heavily questioned. Allen is a known drug addict who has previously lied in a court of law, specifically admitting that he lied in the 19th Judicial District Court of Louisiana concerning the carjacking and robbery of William Johnson. ROA.1918-19. Perhaps most significantly, Allen admitted he shot Robby Knight on October 5,

11

2009, believing Knight was going to "pay him back" for shooting Knight's friend William Johnson. ROA.1901.

The jury also heard testimony from William Johnson, who also admitted he was a drug dealer and that he continued to sell drugs even after being shot by Allen. ROA.1579; 1728-29. Johnson was unable to definitively state whether Perry was involved in the robbery of his person. ROA.1664. However, Johnson did testify that it was Perry who informed Johnson, through Robby Knight, that Allen committed the robbery. ROA.1742. At trial, Johnson admitted to purchasing drugs from Perry on a weekly basis (ROA.1590), but also admitted to dealing and purchasing from Eric Perry, Darnell Dalton, and Jermaine Chapman, each individually, in the past. ROA.1593. When Johnson was buying contraband from Perry, he testified that no one else was involved. ROA.1659. Johnson's testimony did not indicate Perry conspired with any of the other co-defendants or government witnesses. Rather, it provides further support that the parties were purchasers of cocaine, individually, and in summary. These relationships were nothing more than purely transactional interactions, never crossing the line to conspiracy.

Darnell Dalton, an unindicted co-defendant in this case who goes by the street nickname "Menace," having earlier plead in a multi-count indictment, was also called by the Government to testify. ROA.2343. Like many of the government witnesses, Dalton is an admitted every day marijuana user, a career

12

criminal, and habitual offender previously convicted of a number of serious felonies, including Accessory to Armed Robbery, Possession of Cocaine, Aggravated Assault with a Gun, Battery on a Police Officer, Second Degree Battery and other drug cases.  ROA.2350. While on the stand, Dalton admitted he lied to the Drug Enforcement Administration during interviews with the agency. ROA.2426-30. Although Dalton did admit that he purchases drugs from Perry (ROA.2355-56), Dalton testified that he sold drugs on his own, not at the direction of Perry.  ROA.2469. According to Dalton, he did not work for Perry.  ROA.2470. This fact was further confirmed by the testimony of Jonathon Johnson, a co-defendant who plead out of the case early on, who stated that Perry never supplied Dalton with drugs; rather, Dalton "did his own thing." ROA.2646-47. Johnson also testified that he never considered himself employed or working for Perry. ROA.2715.

Admitted drug dealer and brother of Jeffery, Eric Perry, testified pursuant to his plea agreement.  ROA.2922-23. Eric admitted he was a regular user of Marijuana and Codeine Syrup, and tried cocaine in the past.  ROA.2927, 2929. On one occasion, Eric testified that he did not get cocaine from Perry (ROA.2938), but later stated that he bought crack cocaine from his brother on a previous occasion. ROA.2946, 2968.   Like Dalton, he also disputed the truth of Mark Allen's testimony, and stated that he never saw Allen "hanging around" Perry.  ROA.2972.

13

According to his testimony, Eric did not consider himself a part of any drug organization and had no business relationship with his brother, Jeffery Perry. ROA.3143.

The transcript in this case is plentiful. Although the pages involve different individuals whose association with Perry varies, the testimony essentially resuscitates a different version of the same general tale: A witness confessed to purchasing cocaine from Jeffery Perry at some point in the past, that he had no business relationship with Jeffery Perry outside of the casual or occasional buyer, and finally, that as a witness for the Government, each were testifying in cooperation and in hopes of leniency from the Government.[6]

An unindicted individual in the case, Robby Knight, also testified that as a confidential informant for the Government, he bought 2¼ ounces of cocaine from Perry.  ROA.2584. More importantly, Knight testified that although he saw co-defendants and other individuals such as Chapman, Dalton, and Johnson come and go throughout the neighborhood, he did not witness any of the individuals engaging or involving themselves in criminal activity with Perry.  ROA.2602.

---

[6] *See, e.g.*, Testimony of Blaze Franklin, ROA.3249-3325; Testimony of Johnathon Johnson, ROA.3192-3236.

14

It is from the foregoing that Perry was convicted of all the counts for which he was charged except that of Count Three and Count Twelve.  ROA.3671, 3675.[7] In this regard, there was no evidence presented by the Government affirmatively proving beyond a reasonable doubt that Perry and any of the various Government witnesses were involved in a joint endeavor and concerted collaboration with each other to accomplish the same goal of profiting from the illicit distributions of cocaine or crack cocaine.  No evidence was presented by the Government to establish that Perry had any knowledge of what any of the buyers did with the cocaine once purchased from him.  No evidence was presented by the Government to establish that Perry exerted any control whatsoever over any of the buyers, or that Perry had any particular interest in any of the buyers' disposition of the cocaine they purchased from him.

Further, no evidence was presented by the Government to establish that Perry had a stake in the resale of the cocaine he sold to any of the buyers, or that Perry was in any way involved in trying to effectuate or promote the sale of cocaine to any of his buyers.  No evidence was presented by the Government to establish that Perry was a member of any drug distribution activities undertaken by

---

[7] Count Three pertained to the possession of a Smith and Wesson .40 caliber pistol in furtherance of drug trafficking relating to the crime charged in the Conspiracy Count One. ROA.135. Count Twelve pertained to the distribution of Cocaine between November 6, 2010, and on or about November 12, 2010. ROA.139.

15

any of his buyers.  No evidence was presented by the Government to establish that any buyer ever turned over any profits to Perry from the buyer's resale of the cocaine previously purchased from Perry.  No evidence was presented by the Government suggesting that Perry did not make his profit at the point of sales to his buyers: that is, no evidence was presented that any of Perry's profit depended upon the subsequent success of any of the buyers' distribution of cocaine to customers of the buyers.  No evidence was presented by the Government that Perry and his buyers had any commitments to one another: that is, no evidence was presented that a buyer was not free to patronize a supplier/seller other than Perry and there was no evidence that Perry was under any obligation to meet the needs of any buyer.  No evidence was presented by the Government that any of the buyers held any positions whatsoever regarding Perry's cocaine sales beyond that of being buyers and no evidence was presented that any of the buyers were otherwise invested in the success of the venture.

## IV.  <u>SUMMARY OF THE ARGUMENT</u>

The current conspiracy prosecution represents an attempt to place a square peg in a round hole.  Perry was indeed a seller, but not a conspirator.  There is a fatal void in the district court record; that is, sufficient evidence by the Government of Jeffery Perry's agreement with another to distribute cocaine.

16

The Fifth Amendment of the United States Constitution requires that every defendant is given a meaningful opportunity to defend against the charges brought against him and a jury finding of guilt beyond a reasonable doubt.[8] Thus, under the Due Process Clause, it is the duty of the Government to prove every element of a charged offense beyond a reasonable doubt.[9]   Because the evidence of Perry's participation in a criminal conspiracy was insufficient as a matter of law to support a conspiracy conviction, under the Due Process Clause of the United States Constitution, reversal is necessary.[10]

At trial, the Government attempted to argue that Perry was the center of a long-term conspiracy beginning in August of 2006 through September 2011, in which the cooperating witnesses who testified were his distributors or business partners. In order to establish Perry's knowing and voluntary participation in the charged conspiracy, the Government was required to prove that Perry entered into an agreement with one or more persons to possess with the intent to distribute cocaine. The totality of the evidence presented, however, merely established a buyer-seller relationship between Perry and a number of buyers. Although the

---

[8] U.S. CONST. AMEND. V.

[9] *Jackson v. Virginia,* 443 US 307, 319 (1979); *In re Winship,* 397 U.S. 358, 361 (1970); *United States v. Williams,* 20 F.3d 125, 128 (5th Cir. 1994).

[10] U.S. CONST. AMEND. V.

evidence established that Perry and each of the buyers did agree to commit the crime of individually selling and buying large quantities of controlled substances, the evidence failed to establish that Perry and any of these witnesses had a joint conspiratorial agreement and criminal objective of distributing cocaine. The mere presence at the scene of alleged transactions, the similarity of conduct among various persons, or the fact that they may have associated with each other, or may have assembled together and discussed common aims and interest, does not necessarily establish proof of a conspiracy.[11] Rather, conspiracy requires proof of standardized dealings between two or more individuals with whom a level of mutual trust is exhibited, as well as an ongoing arrangement and profits that are dependent on the success of each individual's distribution efforts.[12] The Government's proof demonstrated nothing more than various unrelated arm's-length transactions between buyers and sellers. Conspiracy cannot be inferred by piling inference on inference.[13]

Noticeably absent from the Government's case was either direct or sufficient circumstantial proof of an explicit agreement to resell drugs.[14] As will be further addressed below, mere repeat sales or large quantities of drugs, without more,

---

[11] *United States v. Casto,* 889 F.2d 562, 565 (5th Cir. 1989).
[12] *Direct Sales Co v. United States*, 319 U.S. 703, 713 (1943).
[13] *Id.*
[14] *United States v. Contreras*, 249 F.3d 595 (7th Cir. 2001).

18

cannot sustain a conviction of conspiracy to distribute.[15] In addition, the prolonged cooperation and proof of the seller's knowledge of and shared stake in the buyer's resale efforts, which can sometimes circumstantially prove a conspiracy, is conspicuously absent here. Perry's relationships with each of the witnesses generally spanned different periods of time with significant gaps in between, were of varying durations and were isolated buyer-seller transactions at best. Further, the evidence does not show that any of the witnesses were, or believed themselves to be, Perry's "distributors" or "business partners" or that he relied on them to reach buyers.

The Government's evidence, if believed by the jury, permitted the jury to conclude only that Perry was a purveyor of large quantities of cocaine to his buyers. The evidence was simply insufficient to prove that Perry had a concrete, interlocking interest with or shared stake in any of the witnesses selling cocaine. No matter how overwhelmingly the Government was able to show Perry's participation in drug sales, it failed to show his agreement to join in the further crime of conspiracy to possess with the intent to distribute cocaine.

---

[15] *United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir. 1993) (en banc) ("What is necessary and sufficient is proof of an agreement to commit a crime other than the crime that consists of the sale itself.") (this part of the *Lechuga* opinion reflected the view of the majority of the judges, as noted in *United States v. Dekle*, 165 F.3d 826, 829 n.3 (11th Cir. 1999)).

19

Thus, even viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found that Perry conspired with any of the witnesses to distribute cocaine. In summary, the Government failed to prove conspiracy beyond a reasonable doubt on each and every element in accordance with the standard set forth by the United States Supreme Court. As a result, Appellant Jeffery D. Perry respectfully requests that this Court reverse the District Court's judgment in its entirety, or in the alternative, reverse the judgment and conviction as to Count One based on the insufficiency of the evidence.

## V.    THE ARGUMENT

### A. The Evidence Presented by the Government was Insufficient to Support Appellant's Conviction of Conspiracy to Possess with the Intent to Distribute in Violation of 21 U.S.C. § 846

While it is understood that the prosecution is not "under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt," and therefore need not prove every element of a crime beyond any doubt, a person accused of crime is presumed by law to be innocent until each element of the crime necessary to constitute his guilt, is proven beyond a reasonable doubt.[16]  In reviewing the sufficiency of the evidence to support a criminal conviction, the Due Process Clause of the Fifth Amendment requires this Court to determine whether the evidence is *minimally sufficient* to support a conviction for conspiracy to

---

[16] La. Code Crim. Proc. art. 804(A)(1).

20

possess cocaine with the intent to distribute. It is incumbent upon this Court to reverse a conviction if, after viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.[17]

A conspiracy conviction is not a guileless substitute for a drug distribution conviction. It is an agreement with a particular kind of object – an agreement between two or more persons to commit a crime.[18]  To establish a conspiracy under 21 U.S.C. § 846, the Government must prove: (1) an agreement existed between two or more persons to violate federal narcotics law; (2) the defendant knew of the existence of the agreement; and (3) the defendant voluntarily participated in the conspiracy.[19] When the sale of some commodity, such as illegal drugs in this case, is the substantive crime, the sale agreement itself cannot be the conspiracy, for it has no separate criminal object. What is required for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the agreement itself. When asked to consider *en banc* the question of whether the sale of large quantities of controlled substances, without more, can

---

[17] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (overruled on other grounds by *Schlup v. Delo*, 513 U.S. 298 (1995)); *United States v. Rios-Morales,* 541 Fed. App'x 373 (5th Cir. 2013).

[18] *Iannelli v. United States*, 420 U.S. 770, 777 (1975).

[19] *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012).

sustain a conspiracy conviction, writing for the court in *United States v. Lechuga*, Judge Posner considered a poignant analogy:

> A person who sells a gun knowing that the buyer intends to murder someone may or may not be an aider or abettor of the murder, but he is not a conspirator, because he and his buyer do not have an agreement to murder anyone.[20]

In contrast, a simple drug transaction – on one end to sell and the other to buy – does not amount to a conspiracy because "it has no separate criminal object."[21]   What distinguishes a conspiracy from its substantive predicate offense is not just the presence of any agreement, but an agreement with the same joint criminal objective.[22] This joint objective is missing where the conspiracy is based simply on an agreement between a buyer and a seller for the sale of drugs.[23] Although the parties to the sales agreement may both agree to commit a crime, they do not have the joint criminal objective of distributing drugs.[24]   Mere repeat sales of large quantities of drugs without more, however, cannot sustain a

---

[20] 994 F.2d 346, 349 (7th Cir.), *cert. denied*, 510 U.S. 982 (1993).

[21] *United States v. Lechuga*, 994 F.2d 346, 350 (7th Cir. 1993).

[22] *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999).

[23] *Id.*

[24] *Id.*

22

conviction of conspiracy to distribute.[25]    Nor can proof of purchased quantities larger than could be used for personal consumption.[26]

Instead, necessary and sufficient proof of an agreement to commit a crime other than the crime that consists of the sale itself requires that, "[t]he government must show an agreement to commit a further crime … the subsequent distribution of drugs by the buyer." [27]   In the absence of direct evidence of an agreement to further distribute drugs, the government may offer circumstantial proof of the requisite agreement. [28]   Stated another way, the question becomes whether the evidence presented to the court "point[s] to a concrete, interlocking interest beyond individual buy-sell transactions [which supports] the fact finder's [apparent] inference that at some point, the buyer-seller relationship developed into a cooperative venture."[29]   To determine whether a defendant has conspired with others to distribute drugs, courts which have considered this question often examine several factors: (1) the length of the affiliation; (2) whether there was an established method of payment; (3) the extent to which the transactions were

---

[25] *See United States v. Contreras*, 249 F.3d 595, 599 (7th Cir. 2001); *Lechuga*, 994 F.2d at 347.
[26] *Id.*
[27] *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001).
[28] *Id.*
[29] *United States v. Fuller,* 532 F.3d 656, 663 (7th Cir. 2008); quoting *United States v. Hach*, 162 F.3d 937, 943 (7th Cir. 1998), *cert. denied*, 526 U.S. 1103 (1999).

23

standardized; and (4) the level of mutual trust. [30]   Other considerations include: (5) the amount of drugs transacted and the number of transactions;[31] (6) whether sales were made on credit or consignment; [32] and (7) whether the seller offers the buyer a discount.[33]   None of these factors are conclusive or exhaustive; however, after analyzing these factors, there have been instances in which a court has reversed a conviction involving repeat sales of distribution amounts of drugs when the evidence was insufficient to show either an interlocking interest or prolonged cooperation and a shared stake in the buyer's resale efforts.[34]

The evidence presented by the Government was insufficient to prove Perry's knowing and voluntary participation in a conspiracy.[35] The Government heavily relied on the testimony of the following cooperating witnesses to prove the alleged conspiracy: (1) Darnell Dalton; (2) Robby Knight; (3) Johnathon Johnson; (4) Eric Perry; and (5) Mark Allen. Three of these cooperating witnesses previously pleaded guilty to a drug charge or a felony and entered into an agreement with the Government in an effort to reduce their sentences. Additionally, many of the

---

[30] *Rivera*, 273 F.3d at 755.

[31] *Id.; United States v. Thomas ("Thomas II")*, 284 F.3d 746, 752-53 (7th Cir. 2002) .

[32] *Contreras,* 249 F.3d at 600; *Lechuga*, 994 F.2d at 363 (Cudahy, J. concurring in part, dissenting in part).

[33] *Contreras*, 249 F.3d at 600; *Rivera*, 273 F.3d at 756.

[34] *See, e.g., Contreras*, 249 F.3d at 595; *Rivera*, 273 F.3d at 751; *Thomas II*, 284 F.3d at 746.

[35] *See*, e.g., *United States v. Rios-Morales*, 541 F. App'x 373 (5th Cir. 2013).

24

cooperating witnesses are or were former drug addicts, further calling into question the credibility of their testimony.[36]   However, even if these witnesses' testimonies were credible, the evidence was insufficient to prove that Perry had a conspiratorial agreement with these witnesses or with anyone else, to distribute cocaine.

Specifically, Darnel Dalton directly testified that he sold drugs on his own, not at the direction of Perry. ROA.2469. Dalton also testified that he did not work for Perry and had no stake in Perry's efforts.  ROA.2469-2470. In regard to the second witness, Roby Knight testified that he purchased approximately 2 1/4 ounces of cocaine from Perry, but did not associate the transactions with any conspiracy or narcotics trafficking.  ROA.2584. This fact is uncontested and incontrovertible. Further, as shown, repeat sales without more, simply do not place the participants' actions into the realm of conspiracy.  There is no evidence that Perry fronted cocaine to Knight, nor any established method of payment suggesting Perry's participation in a conspiracy.  Turning to Johnson's interactions with Perry, though he testified he saw Perry cooking powder into crack, he did not establish anyone else was involved with Perry in distributing the crack. ROA.2650. At most, Knight testified that would get supplies such as baking powder and plastic

---

[36] See *United States v. Roe*, 210 F.3d 741, 748 (7th Cir. 2000) (stating that "[t]he testimony from informants who are former drug addicts must be subject to special scrutiny."); *see also*, *United States v. Miele*, 989 F.2d 659, 666 (3d Cir. 1993)(stating that "[w]e have long followed the general rule that juries in criminal cases should be specially instructed to receive the testimony of an addict-informant with caution and to scrutinize it with care.")

25

baggies for Perry (ROA.2651), but later recanted and said he did not get any supplies for Perry for the Delphine Street address. ROA.2652. Finally, Eric Perry's testimony, while arguably establishing Perry as directly selling to individuals, did not establish any type of network or conspiracy, but rather an arm's length transaction when reviewed as a whole.  ROA.2930, 2940.

Moreover, though the statements themselves of alleged co-conspirator(s) certainly can be considered by the trier-of-fact, such are not alone sufficient to establish the existence of a conspiracy, or a person's participation in it.[37]   The Government cannot prove a conspiracy merely by presenting evidence placing the defendant "[i]n a climate of activity that reeks of something foul."[38]

In short, the evidence in this case provides nothing to support the contention that the transactions were standardized.  Rather, Perry's relationships with these witnesses spanned different periods of time, they involved different people, different prices, different locations, and different methods of payment and delivery. Such a system does not allow the fact-finder to infer conspiracy.   The Government's case focused primarily on Perry's role as a drug seller and wholly glossed over the fact that a conspiracy charge must involve an agreement to resell

---

[37] *United States v. Emuegbunam,* 268 F.3d 377, 395-96 (6th Cir. 2001); *United States v. Fitzharris,* 633 F.2d 416, 424 (5th Cir. 1980).
[38] *United States v. Maltose,* 985 F.2d 743, 746 (5th Cir. 1992) (quoting *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir. 1982)).

26

the drugs.   No matter how overwhelmingly the Government showed Perry's

participation in drug sales, it did not show any agreement to join in a further crime.

Addressing a similar question, in *United States v. Villegas*, the United States

Court of Appeals for the Eleventh Circuit eloquently stated:

> Deciding what is or is not sufficient evidence is always a difficult
> chore and it becomes even more so when the factual backdrop
> consists of a reprehensible traffic in pernicious narcotics. *But the*
> *presumption of innocence remains constant, irrespective of the*
> *heinous nature of condemned activity, as does the requirement that*
> *the government prove its case beyond a reasonable doubt*,
> notwithstanding the presence of mere suspicion and speculation.[39]

While Perry might admit to a number of isolated and sporadic transactions,

his mere association with other co-defendants, including some of whom are his

relatives, is insufficient to prove the intricate involvement and participation

necessary to establish a conspiracy.[40] Clearly, when viewing the evidence in the

light most favorable to the Government, no rational trier of fact could have found

that Perry agreed with any of the witnesses or co-defendants to possess cocaine

with the intent to distribute, because the evidence is insufficient to show that the

---

[39] *United States v. Villegas*, 911 F.2d 623, 630 (11th Cir. 1990) (emphasis added).

[40] See *United States v. White*, 569 F.2d 263 (5th Cir.), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978); *United States v. Gutierrez*, 559 F.2d 1278 (5th Cir.1977); *United States v. Oliva*, 497 F.2d 130 (5th Cir.1974) ("Knowing participation in a conspiracy, however, cannot be proved solely by a family relationship or other types of close association.")).

essential element of conspiracy was established and thus Perry's conspiracy conviction should be overturned.

## VI.  CONCLUSION

Perry, in this matter, was convicted for association with others who may have been involved in the trafficking of controlled substances. The accusations against Perry by confidential informants and co-conspirators, and even law enforcement authorities, at best, could only establish Perry in a seller-customer relationship, not one of a network. Though Perry's choice of individuals with whom he may have associated might be considered poor judgment, mere presence or pictures with others involved in criminal conduct does not translate into a conspiracy to distribute drugs.

The evidence provided by the Government did not show Perry participated in prolonged cooperation with any of the witnesses, neither did he have a concrete, interlocking interest in the witnesses' resale of the drugs, or a shared stake in the witnesses' resale activities. In so holding, the Middle District has essentially held that a conspiracy to distribute drugs can be based on nothing more than spot sales by a single supplier to one or more purchasers for resale. Nor were the witnesses who testified against Perry credible.

Simply stated, there was no conspiracy between Perry and others involved in this matter except through mere association, acquaintances, friendship and

28

relatives. Thus, because the evidence was insufficient to convict Perry, it goes

without saying that no rational juror could have found Perry guilty beyond a

reasonable doubt of conspiracy to distribute. As a result, a reversal and remand of

this matter to the District Court is prayed for, in addition to any other relief which

should be granted, if less than all of the counts are reversed.

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

By: <u>s/Michael Sean Walsh</u>
    Michael Sean Walsh (La. Bar Roll No. 08500)
    Post Office Box 2471
    Baton Rouge, LA 70821-2471
    Telephone:  (225) 387-3221
    Facsimile:  (225) 346-8049

***Appointed Attorney by the United States Middle
District of Louisiana for Defendant, Jeffery D. Perry***

29

## VII.  CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of the portions exempted by 5th Cir. R. 32.2.7(b)(3), this brief contains 7,246 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Microsoft Word software.

3. Undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking this brief, and imposing sanctions against the person who signed it.

Signed this 6th day of July 2016.


*s/Michael Sean Walsh*
MICHAEL SEAN WALSH

1366047.v1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Original Brief on behalf of Jeffery D. Perry, as Appellant, was filed via the Court's electronic filing system, and was served on counsel for the Government, via the Court's electronic notification system.  Two paper copies will also be mailed to counsel for the United States, addressed as follows:

ROBERT PIEDRAHITA
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone:  225-389-0443

Baton Rouge, Louisiana, this 6th day of July, 2016.

*s/Michael Sean Walsh*
MICHAEL SEAN WALSH

31